UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
**LAREDO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. |
| | ) | 5:10-CR-612 |
| v. | ) | (12-CV-27) |
| | ) | |
| ROGELIO VALERO-DE LA ROSA, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION and ORDER** |

\*\*    \*\*    \*\*    \*\*    \*\*

Defendant Rogelio Valero-De La Rosa having filed a motion for relief under 28 U.S.C. § 2255], and the Court being advised,

**IT IS ORDERED** that Defendant's motion be, and the same hereby is, **DENIED** for the reasons which follow.

Valero appeals from the amended judgment of conviction and sentence imposed by the district court on March 2, 2011 (D.E. 29).[1]  He filed this timely § 2255 Motion on February 27, 2012. (D.E. 34; Civil Action No. L-12-27).

**STATEMENT OF THE CASE**

**A. Course of Proceedings**

On March 16, 2010, Valero was charged with illegal re-entry after deportation in violation of 18 U.S.C. § 1326 (D.E. 1).  On

---

[1]  "D.E." refers to the docket entry in Criminal No. L-10-612, styled *United States of America v. Rogelio Valero-De-La-Rosa*, in the Laredo Division of the United States District Court for the Southern District of Texas.

May 13, 2010, pursuant to a plea agreement with the government, Valero entered a plea of guilty to the indictment (D.E. 14). As part of the plea agreement, Valero agreed to waive his right to appeal the sentence and to collaterally attack his conviction and sentence, including filing a 2255 Motion (D.E. 15).

On March 2, 2011, the undersigned, sitting by designation, sentenced Valero to serve 82 months of imprisonment consecutive to 8 months of imprisonment for his violation of supervised release for a total term of imprisonment of 90 months in the custody of the Bureau of Prisons (D.E. 29, p. 3).

Consistent with the provisions of his plea agreement, Valero did not appeal.   Rather, inconsistent with his plea agreement, he filed the instant § 2255 motion on February 27, 2012 (D.E. 34).

**B. Statement of Facts Underlying the Conviction and Sentence**

1. <u>Offense conduct.</u>

The plea agreement Valero entered into with the Government contained the following "Factual Basis for Guilty Plea":

> 14. **Defendant is pleading guilty because he/she is guilty** of the charges contained in Count One (1) of the Indictment, and **the facts set forth by the United States meet the elements of the crime he/she is pleading guilty to on this date.** If this case were to proceed to trial, **the United States could prove each element of the offense beyond a reasonable doubt.** The following facts, among others, would be offered to establish the defendant's guilt:

> **Defendant is a native and citizen of Mexico** with no documents allowing him to enter, travel through, or remain in the United States. Defendant was previously removed from the United States on or about March 12, 2008 from Brownsville, Texas to Mexico. Thereafter, Defendant was found in the United States on or about December 21, 2009 at or near Laredo, Texas. There is no record that the defendant had ever applied for or received the permission of the United States Attorney General or the Secretary of the Department of Homeland Security to apply to re-enter the United States after his removal.

(D.E. 15, p. 7-8 (emphasis added)). Valero acknowledged that these facts were true by signing the plea agreement. *See id.*, p.9.

2. Guilty Plea and Plea Agreement

In addition to the factual basis Valero agreed to, in the plea agreement, *inter alia*, he expressly waived his right to collaterally attack his conviction or sentence in a § 2255 motion, as follows:

> 7. Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined. Additionally, **the defendant is aware that Title 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.**

(D.E. 15, p. 4 (emphasis added.)) Valero signed the Plea Agreement, as well as the "Plea Agreement Addendum," which stated:

> I have consulted with my attorney and fully understand my rights with respect to the charges pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

(D.E. 16, p. 2).

At the rearraignment hearing, Valero executed a waiver of the right to plead guilty before a United States District Judge as well as a consent to proceed before a United States Magistrate Judge. (*See* D.E. 18, p. 1.) In open court, Valero agreed to plead guilty to the Indictment, the Government summarized the written plea agreement, the Court explained that the district court may consult the sentencing guidelines in determining his sentence and explained the range of punishment. (*Id.*) The Magistrate Judge found that Valero had consented orally and in writing to enter the guilty plea before the Magistrate Judge, "fully understands the nature of the charges and penalties," "understands his Constitutional and statutory rights and wishes to waive those rights." (*Id.*, p. 2.) The Magistrate also found that Valero's plea "is made freely and

voluntarily," and that he "is competent to enter this plea of guilty," and that "there is an adequate factual basis for this plea." (*Id.*) The Magistrate Judge recommended that the district court accept the guilty plea and enter final judgment of guilt against the defendant. (*Id.*) In her Report and Recommendation to the district court, the Magistrate Judge noted that "the parties may file objections to this Report and Recommendation within fourteen days after being served with a copy of the Report and Recommendation.

On June 8, 2010 Senior United States District Judge Kazen entered an Order stating, *inter alia*, "Noting no opposition by the Defendant to the Report and Recommendation, the Court ORDERS that the Report and Recommendation of the United States Magistrate Judge be and is hereby adopted." (D.E. 19).

3. <u>The Sentence.</u>

Prior to sentencing, the probation office prepared a presentence report ("PSR") which calculated the advisory Guideline imprisonment range based on a total offense level of 21 and a criminal history category of V to be 70 to 87 months, and the statutory maximum term of imprisonment to be 20 years, pursuant to 8 USC § 1326(b)(2).(PSR ¶¶ 48, 49).

Valero's counsel filed objections in support of a motion for downward departure for a criminal history score that over-

represents the seriousness of Valero's criminal history because he received two criminal history points for a prior conviction at the age of 18, over 9 years earlier, and three criminal history points for a conviction at the age of 19, which occurred over 8 years earlier. The probation office responded:

> The probation officer does not agree. The criminal history points have been correctly calculated and all applicable guidelines have been applied, pursuant to USSG § 4A1.1. The offense committed by the defendant at the age of 18 was for aiding and abetting the illegal reentry of undocumented aliens where he received three years['] probation, which was revoked and sentenced to 3 months['] imprisonment. The conviction at the age of 19 was for transportation of a certain undocumented alien within the United States by means of a motor vehicle for private financial gain, win which he was sentenced to 21 months['] imprisonment, and eventually revoked to 6 months['] confinement. Although these arrests occurred over 8 years ago, they demonstrate a pattern of the defendant violating the immigration laws of the United States.

(PSR, Supplemental Addendum). Valero's counsel also asked the Court for a downward variance from the guideline range and to impose a sentence "that is sufficient, but not greater than necessary," pursuant to 18 USC §3553(a).[2] (*Id.*) In addition, Valero's mother, grandmother and wife submitted "character letters" for the Court to consider at the time of sentencing.

---

[2] Section 3553(a) provides that a "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and it enumerates several factors a court "shall consider" in determining an appropriate sentence, including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 USC § 3553(a)(1).

Valero's wife specifically stated that Valero "regrets his decision of re-entering the United States illegally." *See* PSR, Second Supplemental Addendum.

At sentencing, the Court asked Valero directly whether he had seen the PSR and whether he had any objections to it. (D.E. 40, p. 2). Valero stated that he had seen it and had no objections. (*Id.*, p. 3). Counsel argued the circumstances on the case in support of the downward departure motion. (*Id.*, p. 3-6). Valero then spoke on his own behalf. (*Id.* p. 6).

The Court said that the criminal history was appropriately calculated and does not warrant a departure. At an offense level 21, criminal history category V, the advisory guideline range found by the Court is 70 to 87 months, with an additional 8 months for the revocation of supervised release, to be served consecutively. (*Id.*, p. 7-8). The Court sentenced Valero to serve 82 months of imprisonment consecutive to 8 months of imprisonment for his violation of supervised release, for a total term of imprisonment of 90 months in the custody of the Bureau of Prisons (D.E. 29, p. 3). When asked Valero expressly stated that he had no "questions or objections regarding that sentence." (D.E. 40, p. 9).

4. <u>Valero's Instant Claims</u>

Valero first alleges that counsel was constitutionally ineffective because he "recommended that Valero sign a plea agreement which contained waivers of appeal and provided zero benefit to Valero which Valero could have attained via a 'straight up' plea." (D.E. 34, § 2255 Motion, Ground One); (D.E. 35, p. 9-16).

Valero next alleges that counsel was constitutionally ineffective for the alleged failure to recognize the "request a downward departure based upon amendment 740 for cultural assimilation of the United States Sentencing Guidelines which became active four months prior to his client's sentencing." (D.E. 34, § 2255 Motion, Ground Two); (D.E. 35 p. 16-19).

Valero's third argument is that his counsel was constitutionally ineffective by failing to recognize that the single recency point added to Valero's criminal history score was incorrect due to the elimination of recency points by Amendment 742, effective November 1, 2010. (D.E. 87, § 2255 Motion, Ground Three); (D.E. 89 p. 20-22).

In his penultimate argument, Valero claims that his counsel was ineffective for failing to "either (1) request a motion from the Government for a 'fast track' downward departure as part of his plea agreement, or (2) request a downward departure from the

court at sentencing as the 'fast track' program was no longer available in Laredo." (D.E. 34, § 2255 Motion, Ground Four); (D.E. 35, p. 22-28).

Finally, Valero claims that counsel was constitutionally ineffective by failing to investigate Valero's "claim that he was in fact a United States citizen and therefore was factually innocent of Illegal Re-entry." (D.E. 34, § 2255 Motion, Ground Six); (D.E. 35 p.28-40).

## C. Enforcement Of The Plea Agreement

The government seeks to enforce the plea agreement. In this regard, it is noted that Valero's motion asserts claims of ineffective assistance of counsel. A liberal reading of Valero's § 2255 motion discloses that most of Valero's allegations regarding his sentence and dissatisfaction with counsel, fall within the scope of his § 2255 waiver because, on their face, they are not direct challenges to the voluntariness of his plea and, therefore, the waiver. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). On the other hand, an ineffective assistance claim survives a § 2255 waiver "only when the claimed [ineffective] assistance directly affected the validity of that waiver or the plea itself." *Id.* In this case, none of Valero's claimed ineffective assistance grounds directly affect the validity of the waiver or the plea.

Valero challenges the validity of his plea in Ground 1 only. However, the allegations in Ground 1 conflict with the record and are otherwise without merit for the reasons which follow.

Valero voluntarily waived his right to bring this instant action in his plea agreement and at his rearraignment. Valero entered into a plea agreement where, in exchange for the Government's promise to not oppose the 2 acceptance of responsibility points and to move for the third point consistent with the requirements of USSG § 3E1.1(b), he agreed to a broad and unequivocal waiver of collateral relief.  The Plea Agreement expressly stated the following:

> 10. Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding, including but not limited to Title 28, U.S.C. § 2255.

(D.E. 22, p. 5, ¶10.)

During Valero's rearraignment, in a colloquy with the presiding magistrate judge, Valero testified that he had time to talk with his attorney and was satisfied with his attorney's

help in this case (D.E. 69, p. 6). Valero testified that he understood the rights he was giving up by pleading guilty. (D.E. 43, p. 15-16, 22).   Further, Valero acknowledged that he understood the consequences of the waiver of appellate rights and his right to "appeal" his conviction and sentence under the provision of 28 U.S.C. § 2255. *Id.* The Court made the finding that Valero understood the nature of a voluntary plea, and, after Valero entered a plea of guilty, found that his plea was knowing and voluntary and he entered into the plea agreement knowingly and voluntarily.

Valero's sworn statements in open Court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The Fifth Circuit gives "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Valero's sworn statements preclude the relief he seeks in this proceeding.

Valero knew the potential punishment he faced. He also knew his plea was knowing and voluntary. Valero's testimony was abundantly clear that his decision to plead guilty was voluntary and that no one had forced or coerced him to plead guilty. (D.E. 69, p. 17).

Under the terms of the plea agreement, Valero should be held to the bargain to which he agreed. *He knowingly and voluntarily waived his right to file a § 2255 motion.* Accordingly, Valero's § 2255 motion fails, in its entirety, because he specifically waived the right to file such a motion.

The record supports the conclusion that:

(1) the plea agreement and the waiver contained therein were knowing and voluntary;

(2) the waiver provision in the plea agreement is enforceable and supports the government's motion for summary judgment; and,

(3) the waiver and the record in this case preclude Valero from asserting all of the grounds in his current motion.

## D. An Alternative Basis for Denying Relief

Each of the claims raised by Valero will be separately addressed. None of them warrant relief.

Initially, Valero claims in his "Affidavit" that he never discussed it, did not know it contained a waiver of rights, and did not know that he did not have to sign the Plea Agreement. (D.E. 35, p. 9-10). These claims are directly contradicted by Valero's own statement in his Plea Agreement Addendum, (D.E. 16, p. 2), his signing the Plea Agreement (D.E. 15, p. 9), and by

the Magistrate Judge's finding that Valero "fully understands the nature of the charges and penalties" and "understands his Constitutional and statutory rights and wishes to waive these rights," and that his "plea is made freely and voluntarily." (D.E. 18, p. 2).

Valero has failed to make a credible showing of deficient performance on the part of his counsel in the face of contradictory written evidence in the record, including his express acknowledgment that he is satisfied that his attorney had rendered effective assistance, and that he understands the rights that he had, all as set forth in paragraph 13 of the Plea Agreement. Valero's belated conclusory assertions on this point are insufficient to invalidate the knowing and voluntary plea which included his express acknowledgment that he "understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement." (D.E. 15, p. 4 (¶9)). Those concessions, in paragraph 10 of the plea agreement, obligated the United States to do what it was otherwise not obligated to do, that is, not to oppose a downward adjustment of 3 levels for timely acceptance of responsibility.

Valero's statements under oath are entitled to a strong presumption of truthfulness. *Lampaziane*, 251 F.3d at 524.

Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d at 283-84.  The record contradicts Valero's claim that he did not understand his rights and the charges against him. Additionally, Valero's waiver of his right to file a motion pursuant to § 2255 was knowing and voluntary

Because Valero's challenge to the validity of his plea agreement fails, the Court can find that the Plea Agreement and his waiver of § 2255 rights contained therein are valid and enforceable. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). As noted, it is clear from the rearraignment that Valero understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion which is all that is required for his waiver to be enforceable. *See Wilkes*, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  The claim in Ground One is dismissed as barred by his knowing waiver, contradicted by the record and otherwise insufficient to show that counsel's recommendation that he enter into the plea agreement was "below an objective standard of reasonableness."

In short, none of Valero's arguments compel the conclusion that his plea or the appeal waiver was unknowing or involuntary.

The record reveals that he understood the nature of the charges, was admonished as to the constitutional rights he was waiving, and was advised of the potential sentences he faced. In addition, he confirmed under oath that he was entering a knowing and voluntary plea that was not the result of threats or coercion. Every time Valero was asked if he understood the court's admonishments, he answered affirmatively. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007) (holding that the defendant's "statements that his plea was knowing and voluntary and that he understood the rights he was waiving create a presumption that in fact the plea is valid"). *See also United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (finding no error in district court's refusal to hold an evidentiary hearing on ineffective assistance of counsel claim where, at rearraignment, the judge reiterated much of what was set forth in the plea agreement, which the defendant represented to the court that she read and understood).

Valero has failed to show deficient performance by counsel. His allegations are belied by the record that shows a knowing and voluntary plea. He has failed to rebut the presumption that the statements he made under oath during the hearing were true. The initial claims made by Valero are dismissed.

The second argument made by Valero is that his counsel should have requested the district court to apply amendment 740 to the Guidelines, which authorizes a downward departure under § 2L1.2 on the basis of cultural assimilation. Amendment 740 also took effect on November 1, 2010.

However, Valero's claim that counsel rendered constitutionally ineffective assistance due to his alleged failure to request a downward departure or variance based on cultural assimilation or family circumstances is both contradicted by the record and without merit. The record reflects that the undisputed facts of the case do not merit consideration for a guideline departure for cultural assimilation.

In determining whether a counsel's conduct is deficient, the Fifth Circuit has cautioned that attorneys should not be subjected to unrealistic standards and that, when reviewing a § 2255 motion,

> [W]e recognize the tendency, when all else fails, to blame the lawyer. With that in mind, it bears repeating: "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." As we have indicated in the past, the acuity of hindsight is not our proper lens. We will not subject attorneys to unrealistic standards.

*United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994) (citations omitted). Keeping that standard in mind, the Government contends that defense counsel's conduct was not objectively unreasonable. *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.")

The Court was made aware by both counsel and the defendant, as well as the PSR, of Valero's family situation and of his membership in a gang, periods of incarceration, violation of the laws of the United States by returning illegally after deportation and violating supervised release by committing additional offenses, using drugs, failure to report as directed, failure to participate in drug treatment. *See* PSR ¶¶ 24-26., 31-34. It would have been frivolous to argue that a defendant who had repeatedly illegally returned to the United states after

deportation, who had engaged in alien smuggling, who had used aliases, who listed no substantial assets or liabilities on his financial statement was "culturally assimilated" to a degree warranting a downward departure or variance from the indisputably correctly determined guideline range.

Even if counsel had argued more extensively for a downward variance or departure based on Valero's unexceptional family situation and on his "reasons" for knowingly breaking the law by returning illegally after every deportation, the Fifth Circuit has held that a court may consider a defendant's cultural assimilation, but is not required to give it dispositive weight. *United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008). Had his counsel raised this issue, it would not have received favorable consideration in light of the factors outlined above. Thus, Valero cannot establish that his counsel was constitutionally deficient on this ground.

In his third ground for relief, Valero complains counsel was ineffective at sentencing for failing to rely on Guidelines Amendment 742 for calculation of criminal history points. Amendment 742 to USSG § 4A1.1(e), effective November 1, 2010, eliminated points previously assigned based on the recency of committing the instant offense less than two years after an offense counted in § 4A1.1(d). As noted above, when Valero was

sentenced on March 2, 2011, his criminal history calculation included one additional point because the instant offense was committed less than two years after his release from custody. PSR ¶ 32. His criminal history points amounted to 11, placing him in category V. The Amendment 742 argument was not advanced at sentencing by counsel.

The alleged error by counsel in Ground Three is not an attack on the validity of the waiver or the plea, and is, therefore waived and should be dismissed on the basis of the waiver. In addition, the 2009 edition of the Guidelines Manual was used. *See* PSR ¶ 12. Obviously, the 2009 edition included the recency point and did not consider the amendment which was not effective until November 1, 2010. More importantly, Valero cannot show prejudice. Even if the one additional point for recency had been subtracted from his criminal history computation, Valero would still have 10 criminal history points, and would remain in Category V. His advisory guidelines range would be unchanged. Valero's argument that the Court might have given him fewer months of imprisonment if he'd had only 10 criminal history points is purely speculative (not to mention unfounded) and cannot serve to satisfy the prejudice prong of *Strickland. Strickland v. Washington,* 466 U.S. 668 (1984). The calculation of a criminal history score and the issue whether

the defendant's criminal history is under-represented are not commensurate inquiries. In providing for departures under § 4A1.3, the Sentencing Commission recognized that a defendant's "criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." § 4A1.3, cmt. background.

In light of these facts, counsel's failure to object to the single recency point which did not affect the advisory guideline range does not demonstrate prejudice and fails as the basis for an constitutionally ineffective assistance of counsel claim. The claim in Ground Three is dismissed as without merit.

The alleged error by counsel in Ground Four is not an attack on the validity of the waiver or the plea, and is, therefore waived and should be dismissed on the basis of the waiver. In addition, it is wholly without merit.

The so-called "fast track" programs allow certain defendants to plead guilty and to waive certain rights very early in the criminal process, in exchange for a motion by the government for downward departure pursuant to USSG § 5K3.1. Section 5K3.1 provides: "Upon motion by the government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in

which the court resides." Thus, the "fast track" program, initially established in district courts along the southwestern border of the United States in order to accommodate the large number of immigration cases, authorizes the prosecution to offer defendants some form of sentence reduction in exchange for the waiver of certain procedural rights. *See United States v. Rodriguez*, 523 F.3d 519, 526-27 (5th Cir. 2008).

Valero has not provided any evidence that an early disposition, or "fast track," program was available to him in the Laredo Division or that he could have received any benefit from the program. Accordingly, his counsel was not deficient for failing to ask for that benefit, nor is there any prejudice to Valero as a result of such failure. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

To the extent that Valero claims that counsel was constitutionally ineffective by failing to argue that the district court should exercise its discretion to impose a sentence that would minimize the sentencing disparity created by fast track programs in some sentencing jurisdictions but not

others, a district court is not required "to factor in, when sentencing a defendant, the sentencing disparity caused by early disposition programs" to prevent a sentence from being unreasonable." *United States v. Aguirre-Villa*, 460 F.3d 681, 683 (5th Cir. 2006). In addition, any sentencing disparity resulting from fast track disposition programs is not unwarranted as the disparity was also intended by Congress. *See United States v. Gomez-Herrera*, 523 F.3d 554, 562–563 (5th Cir. 2008). Again, counsel's performance was not constitutionally deficient for failing to raise a meritless claim. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995).

In addition, Valero has not shown that there was a reasonable probability that but for counsel's failure to make this "disparity" argument the result would have been different. Valero's argument amounts to nothing more than wishful thinking given his criminal history.

Valero claims that he is a United States citizen and his counsel was constitutionally ineffective for failing to investigate that alleged fact. However, his claim that he is a United States citizen is refuted by the record, which was available to counsel. For example, the indictment to which Valero entered a guilty plea charged that he was "an alien who had previously been . . . . deported." (D.E. 1). He conceded or

admitted his status as an illegal alien and a native and citizen of Mexico numerous times in open court and under oath. (*See, e.g.*, D.E. 15, p. 7-9); (D.E. 16, p. 2); PSR ¶ 3.   The magistrate judge found that Valero "fully understands the nature of the charges" and his waiver of statutory rights to those charges. (D.E. 18). In his Plea Agreement he expressly "waived any right to have the facts the law makes essential to the punishment either charged in the Indictment or proven to a jury." (D.E. 15, p.1 ¶ 1). The PSR reported that when Valero was interviewed by ICE agents, he "admitted being a native and citizen of Mexico who illegally entered the United States on or about December 23, 20[09] by wading the Rio Grande near Laredo, Texas," and that he "did not possess or obtain any documents that would allow him to enter or remain in the United States legally." PSR ¶7.   The PSR went on to state that:

> In a brief statement to the United States Probation Officer, Mr. Valero-De La Rosa **admitted he knew it was illegal for him to return, or attempt to return to the United States** because of his previous deportations to Mexico However, despite his prior deportations, he illegally re-entered the United States December 23, 2009, by wading across the Rio Grande River at Laredo, Texas, to reunite with his family, which includes his mother and siblings in Laredo, Texas. The **defendant is remorseful for his actions and apologized for violating the laws of the United States.**

PSR ¶ 11 (emphasis added). Valero told the probation officer that he was a Mexican citizen born on July 18, 1982 in Nuevo Laredo, Tamaulipas, Mexico. PSR ¶ 38. The PSR also reported:

> While incarcerated for his previous felony, defense counsel assisted the defendant with his application for derivative citizenship with the Department of Homeland Security/citizenship and Immigration Services in San Antonio, Texas. During the application process, his paternal grandmother submitted a petition for an alien relative wherein she described that the defendant's father intermittently resided in Nuevo Laredo, Tamaulipas, Mexico and Texas during his childhood. Immigration authorities subsequently denied the application based on the fact that the defendant failed to prove that his father was physically present in the United States from the age of 16 through 20 (1978 to 1982) which failed to meet the criteria of him being present for ten years, five after the age of 14, and prior to the defendant's birth.

PSR ¶ 39. Additionally, the PSR noted a "character letter" from the Valero's wife in which she said he "regrets his decision of re-entering the United States illegally." PSR, Second Supplemental Addendum.

Accordingly, because Petitioner expressly admitted in the Plea Agreement that he was not a United States citizen, and because there is no indication that the Plea Agreement was not knowingly and voluntarily entered into, Petitioner failed to show that his counsel, who was made aware of all of these facts in the PSR, was constitutionally ineffective for failing to investigate further and argue that Valero was a United States

citizen. Counsel's conduct in the face of Valero's repeated admissions and acknowledgment of his alienage cannot be shown to have fallen "below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688.

Valero has failed to rebut the presumption that counsel's conduct falls within the wide range of reasonable professional assistance. He has failed to show that both deficiency and prejudice resulted from counsel's alleged errors in any of his allegations. The motion should be dismissed with prejudice as barred by his valid waiver of collateral attack in his plea agreement and, alternatively, without merit.

The motion and the record of this case conclusively show that no relief is warranted. Consequently, there is no need for an evidentiary hearing. *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983).

**IT IS ORDERED** that Valero's motion be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that the government's motion for summary judgment/motion to dismiss Valero's § 2255 motion be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that Civil Action No. L-12-027 be, and the same hereby is, **DISMISSED** with prejudice.

A certificate of appealability is denied as no reasonable jurists could differ on the outcome of this case.

This is a final judgment.

This the 6th day of August, 2012.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge